UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH BASH, et al,<br><br>Defendants. | Case No. 1:20-CR-00238-JLT-SKO<br><br>ORDER DENYING DEFENDANTS THE MOTION TO SEVER FILED BY DEFENDANT PERKINS AND JOINED BY DEFENDANT BANNICK<br><br>(Doc. 1416, 1429) |

Evan Perkins moves to sever his trial from the remaining defendants. Mr. Bannick joins in the motion but offers the same arguments. (Doc. 1429) They argue that a trial that is separate from the other defendants would be less prejudicial and more favorable because the government would be limited in the amount of enterprise evidence it could admit. They argue also that because they are not members of the Aryan Brotherhood, the government must prove the RICO claim differently as to them as opposed to their codefendants such that there is a risk of jury confusion and finally, Mr. Perkins argues that his counsel is unprepared to proceed to trial as scheduled. The motion is **DENIED.**

**I.     Background**

The operative indictment alleges that each of the defendants conspired to commit racketeering due to their conduct, which was taken for the benefit of the Aryan Brotherhood criminal enterprise. The "Aryan Brotherhood is a white, race-based gang formed in the California

prison system in about 1964 by white inmates who wanted to gain power and authority in prison." Doc. 1098 at 2. The AB "is a criminal organization whose members and associates engaged in drug trafficking, theft, and acts involving murder, extortion, burglary, robbery, and assault." *Id*. at 2. According to the government, the purpose of the Aryan Brotherhood is to control illegal activities within the California prison system, to enrich its leaders, members, and associates, to preserve, protect and expand the reach of the AB's power and to threaten and use violence to "keep victims in fear of the AB." (Doc. 1098 at 4.) The Aryan Brotherhood does this by authorizing and condoning members and associates to commit criminal acts, by engaging in acts, such as "drug trafficking, theft, robbery, and extortion." *Id*.

In the operative indictment, Mr. Perkins is charged with conspiracy to participate in a racketeering activity (Count 1) and a double VICAR murder (Counts 5 and 6). Mr. Bannick is charged in each of these counts and in a different VICAR double murder (Counts 2 and 3). Each of the other three defendants (Messrs. Clement, Johnson, and Stinson) in the joint trial, are charged in Count 1. Clement and Johnson are also charged in Counts 2 and 3, and Mr. Clement is charged in Counts 5 and 6. The Court understands, through information gleaned through various motions and hearings in this case, that the government will seek to prove that Mr. Clement and Mr. Johnson, who were in prison at the time, ordered the murders and that Mr. Perkins and Mr. Bannick carried out these orders directly or indirectly.

## II.     Analysis[1]

Federal Rule of Evidence 14 provides for the severance of charges or defendants if joinder "appears to prejudice a defendant or the government" and permits separate trials of counts or defendants, or "any other relief that justice requires." The standard for showing prejudice is high. *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). When the government has properly indicted defendants jointly, a joint trial is the "preference in the federal system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id*. (quoting

---

[1] Because this is the fourth motion to sever the Court has considered in this matter—on much the same grounds--it repeats much of what it has recited previously.

2

*Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). A showing of some prejudice is not enough. Rather, the "court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, at 539, emphasis added. Serious risk of harm is shown,

> . . . when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

"The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986)). A defendant:

> must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.

*United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

**A.   The defendants have failed to demonstrate clear, manifest, or undue prejudice will result if the Court does not grant severance**

In support of the RICO count, the government alleges that the racketeering activity includes multiple murders, including those set forth in Counts 2, 3, 5 and 6, extortion, robbery, fraud, identity theft, drug trafficking and arson. Doc. 1098 at 7-9. Mr. Perkins argues he has a very limited role in the charged conspiracy, and Mr. Bannick joins in this argument. Mr. Perkins is alleged to be involved from February 2022 through May 2022, while Mr. Bannick was involved from October 2022 through March 2022. They argue that though Count 1 alleges a multi-year conspiracy, they were not alleged to be involved for most of it. Indeed, the first

predicate act alleged involving one of the defendants set for trial in January 2025, occurred in January 2016 and the last occurred in May 2023. (Doc. 1098 at 7-9) Despite the number of acts alleged, the government need not prove each of them, and it has made clear that it does not intend to do so (*See* Doc. 1447).

The nature of a RICO conspiracy often means that all defendants were involved in each predicate act and not all were involved for the entirety of the conspiracy.[2] *Salinas v. United States*, 522 U.S. 52, 64–66 (1997); *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004); *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008); *United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011). If it were any other way, then a joint trial would rarely be possible in such actions. Rather, "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *Fernandez*, at 1242. Even though Perkins and Bannick could be joined with one of the previously severed trials, this makes little sense given that four of the five defendants going to trial in January 2025 are alleged to have been involved in one or both double murders such that the amount of evidence that would need to be repeated is significant.

For example, the government bears the burden of establishing at trial that the Aryan Brotherhood is a racketeering enterprise for the RICO count and the VICAR counts, so the predicate-act evidence is necessary and relevant even if Mr. Perkins or Mr. Bannick are not involved in each act. Thus, despite some risk of prejudice to Perkins and Bannick caused by a joint trial, the prejudice is not undue or manifest and would not be ameliorated by a separate trial.

---

[2] "[T]o prove a defendant's membership in the agreement, the government need not prove that the defendant committed or agreed to commit any of the charged predicate acts as long as the government proves that he participated in some manner in the overall objective of the conspiracy. *See Salinas*, 522 U.S. at 64, 118 S.Ct. 469; see also L. Sand, et al. Modern Federal Jury Instructions, (Criminal) Inst. 52–32 (2000) (providing that jury be instructed as to predicate acts charged in RICO conspiracy: "Again, the government must prove that two of these acts were, or were intended to be, committed as part of the conspiracy, although it need not prove that defendant committed or agreed to commit any of these acts as long as the government proves that defendant participated in some manner in the overall objective of the conspiracy."). *United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008).

Severing the trials of Perkins and Bannick will not prevent the government from offering evidence of criminal acts of other alleged conspirators at their trial(s). *Zafiro,* at 540. A severed trial would require the government to present evidence of both incidents of double murders once again in the severed trial, involving Weaver and Pitchford, despite that those "severed" defendants are not alleged to be involved in either.[3] On the other hand, a joint trial does not relieve the government of its obligation to prove each defendant's guilt beyond a reasonable doubt. *Zafiro*, at 540–41. The Court will provide instructions to the jury of this burden, and it is well established "juries are presumed to follow their instructions" *Id*. at 540 (quoting *Richardson*, 481 U.S. at 211), and a clear verdict form as to each defendant.

The fact that Mr. Perkins and Mr. Bannick contend that they were not members of the AB is insufficient to justify severance. First, whether they are or are not members of the AB has not yet been proved and the indictment alleges each defendant's connection to the AB same way; some are not alleged to be members and others are not. Second, even Perkins and Bannick are not members of the AB, the Court is convinced that proper jury instructions and multiple verdict forms, likely one per defendant, will address these concerns.

Finally, though Mr. Perkins argues that he will demonstrate that he did not commit acts of violence for any purpose related to the AB, "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, at 540. "The inevitable consequence of any joint trial is that the jury will become aware of evidence of one crime while considering a defendant's guilt or innocence of another crime." *United States v. Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006). Only where the "risk of prejudice is high," is the court "more likely" to consider severance but often, "less drastic measures, such as limiting instructions," are sufficient. *Id*. The Court is unconvinced that the "additional" enterprise evidence, that *may* not be allowed in a severed trial as to him alone is sufficiently prejudicial as to justify severance. The motion is **DENIED**.

---

[3] The Court appreciates that the government will have to do this already related to Mr. Gray, but the key difference is that Mr. Gray is not alleged to be part of the conspiracy alleged in Count 1, and the Court has determined that Mr. Gray would suffer the high risk of undue prejudice if the full brunt of RICO evidence were admitted at his trial.

**B.     Mr. Perkins' counsel have failed to demonstrate that they are unable to be prepared to proceed on the trial date set**

Neither Mr. Perkins nor Mr. Bannick seek a continuance of the joint trial. In fact, though they previously filed a motion to continue the trial, they withdrew the motion at the time of the hearing and then filed the current motion for reasons that were never explained. In any event, they assert now that if their severance motion is not granted, they do not seek a continuance of the trial.

Even still, Mr. Perkins' counsel assert that they cannot be ready for trial as it is currently set.[4] Despite that they did not express any reservation about the trial date in August 2024 at the hearing at which the Court set the deadlines for pretrial activities—including the disclosure of cooperators and informants—they explain that since obtaining this information, the bulk of this evidence is such that they cannot properly prepare for trial. Notably, during the hearing related to a motion to exclude this evidence, it became apparent that, in fact, much of this evidence has been available to the defense since September 2022, and as demonstrated by Mr. Perkins' motion for appointment of the Coordinating Discovery Attorney (Doc. 793 at 2 ["To date, approximately 200 GB of data has been produced including categories of discovery such as: 22,000 document files, proprietary audio and video, a Title III Wiretap Interception on multiple lines, jail calls, seized devices and social media accounts."]) and was produced again in October 2023.

Likewise, though the government has produced a volume of wiretap evidence from a case regarding the Aryan Brotherhood that went to trial in early 2023 and which did not name the defendants here, it does not seek to introduce any of this evidence in its case in chief. Thus, there was no showing that there was ever a formal discovery request for this information or that Rule 16 required it. Moreover, in light of Mr. Perkin's position that he is alleged to have had only very limited involvement in the RICO conspiracy—for a three-month period in 2022—counsel have failed to demonstrate why they believe any of this wiretap evidence is necessary to their preparation or, even, explain what they must do to become prepared. Notably, the remaining

---

[4] Mr. Bannick has successfully convinced the Court that he wishes to represent himself and to proceed to trial as currently scheduled, so the lack of preparedness of his former counsel has no bearing on the issue.

6

defendants, who are alleged to have been involved in the conspiracy for a much longer time, do not claim they cannot be ready for trial. To the contrary, they oppose any request for a trial continuance. Thus, because counsel have failed to make an adequate showing why they cannot be prepared to go to trial as currently set, the Court denies the motion to sever on this basis as well.

**ORDER**

For the reasons discussed, the motion to sever by Mr. Perkins and the joinder by Mr. Bannick is **DENIED**.

IT IS SO ORDERED.

Dated:   **December 5, 2024**

UNITED STATES DISTRICT JUDGE